# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| AREDIA® AND ZOMETA® PRODUCTS ) | |
| LIABILITY LITIGATION ) | |
| ) | No. 3:06-MD-1760 |
| (MDL No. 1760) ) | Judge Campbell/Brown |
| ) | |
| This Document Relates to: ) | |
| *Cole*, 3:06-CV-00506 ) | |

**TO: THE HONORABLE TODD J. CAMPBELL**

## REPORT AND RECOMMENDATION

For the reasons explained below, the Magistrate Judge recommends that the motion to dismiss filed by the Novartis Pharmaceuticals Corporation (NPC) (DE 6427; Related Case 33) be **GRANTED**, that this case be **DISMISSED** with prejudice, and that any pending motions be **TERMINATED** as moot.

## I. INTRODUCTION AND BACKGROUND

The original plaintiff, Sarah Cole ("Ms. Cole"), died on July 27, 2008. (DE 1583; Related Case 11) Prior counsel, Russel Beatie ("Mr. Beatie") of Beatie and Osborn LLP, filed a suggestion of death on September 2, 2008. (DE 1583; Related Case 11) In the suggestion of death, Mr. Beatie represented that Mr. Cole was "the personal representative of Sarah Cole's estate" and that he would be substituted in this action in that capacity. (DE 1583; Related Case 11) Mr. Beatie filed a motion to substitute on November 21, 2008 ("first motion to substitute") asking the court to enter an order substituting Mr. Cole as the "personal representative of the Estate of Sarah Cole." (DE 1837; Related Case 13) The motion was granted on November 26, 2008 based on counsel's representations to the court. (DE 1909; Related Case 14)

NPC filed a suggestion of death on November 13, 2012 advising the court that Mr. Cole died

twelve (12) months earlier on November 26, 2011. (DE 6245; Related Case 22) Thereafter, attorney Daniel Osborn[1] ("Mr. Osborn") filed a motion on February 11, 2013 to substitute David Cole for Mr. Cole – David Cole's father – as executor of the latter's estate ("second motion to substitute"). (DE 6371; Related Case 27) Letters testamentary were issued by the Alabama probate court to David Cole on December 22, 2012 in the matter of <u>his father's estate, not the late Ms. Cole's</u>. (DE 6371, Ex. A; Related Case 27)

On March 4, 2013, NPC filed a combined: 1) motion to vacate *ab initio* the Magistrate Judge's November 26, 2008 order that granted the first motion to substitute arguing that Mr. Beatie misrepresented that Mr. Cole was the "personal representative" of his late wife's estate; 2) motion to dismiss this action with prejudice under Rule 25, Fed. R. Civ. P. arguing that there had not been a valid plaintiff in this action since Ms. Cole died on July 27, 2008; and 3) objection to the second motion to substitute arguing that it did not comply with the requirements in Rule 25(a)(1), Fed. R. Civ. P. and the case management order (CMO) in this multi-district litigation (MDL). (DE 6427; Related Case 33)

The Magistrate Judge entered an order on March 6, 2013 ordering Mr. Osborn to advise the court whether Ms. Cole's estate had ever been opened. (DE 6438; Related Case 36) Although Mr. Osborn never responded to the Magistrate Judge's order, he did file a response in opposition to NPC's motion on March 26, 2013 in which he argued that: 1) NPC was using procedural technicalities to prevent a meritorious case from being presented to a jury; 2) Mr. Cole was the appropriate person to be substituted in November 2008; 3) David Cole's motion to substitute was timely; 4) David Cole was the appropriate person for substitution at the present time. (DE 6508;

---

[1] Attorneys Beatie and Osborn were partners in the law firm of Beatie and Osborn LLP at the time this action commenced. Beatie and Osborn LLP dissolved in December 2008. (DE 2088; Related Case 15) Mr. Osborn moved to substitute himself as the attorney of record in the instant case on May 15, 2009. (DE 2088; Related Case 15) The motion was granted on April 14, 2009. (DE 2149; Related Case 17)

2

Related Case 40) In the attached declaration of Michael T. Mack (Mr. Mack), one of Ms. Cole's surviving children, Mr. Mack attested that his late mother's estate was never opened. (DE 6508, Ex. D, Related Case 40) NPC filed a reply on April 5, 2013. (DE 6558; Related Case 43)

With the foregoing as background, the Magistrate Judge entered an order on May 14, 2013 denying the motion to substitute. (DE 6674; Related Case 48) In that same order, the Magistrate Judge advised the parties that a separate Report and Recommendation (R&R) would be entered recommending dismissal for failure to comply with Rule 25(a)(1) and the CMO. To date, neither party has sought to appeal the Magistrate Judge's order. As the time to do so has passed, NPC's motion to dismiss is properly before the court.

## II. ANALYSIS

### A. Requirements Under Rule 25 and the CMO

The procedures for substitution in this MDL are governed by Rule 25(a), Fed. R. Civ. P. and the CMO. The relevant part of Rule 25(a) in the matter before the court provides the following:

> If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

Rule 25(a)(1), Fed. R. Civ. P.

The court may enlarge the period under Rule 25(a)(1) if a motion for an extension of time is filed within the initial 90-day time frame. Rule 6(b), Fed. R. Civ. P. (1963 amendment). Whether it does or not is left to the court's sound discretion. *Id*. The court also may grant a motion for an extension of time filed after the 90-day time frame has run, but only upon a showing of "excusable neglect." Rule 25 (1963 amendment); 6(b)(1)(B), Fed. R. Civ. P.

The relevant parts of the CMO at issue in the matter presently before the court are as follows:

> Within sixty (60) days of . . . the death of a plaintiff . . . plaintiff's counsel shall file a 'Suggestion of Death' that identifies the plaintiff and describes the time, date, and circumstances of the plaintiff's death.
>
> . . .
>
> The ninety (90) day time period for filing a Motion for Substitution, as Required by Fed. R. Civ. P. 25(a), will commence upon the filing of a Suggestion of Death . . . .
>
> . . .
>
> In the event that applicable state law requires the opening of an estate and the appointment of a personal representative to pursue the claims of a deceased plaintiff, plaintiff's counsel shall initiate or cause to be initiated proceedings to open an estate and/or obtain the appointment of a personal representative for plaintiff within thirty (30) days of the plaintiff's death . . . .

(DE 89, pp. 12-13; 103, p. 1)

### B. Dates Relevant to the Matter Before the Court

The following dates in the record are relevant to the matter presently before the court:

| Date | Event |
|---|---|
| Jul. 27, 2008 | Ms. Cole died. |
| Sep. 2, 2008 | Mr. Beatie timely filed the required suggestion of death following Ms. Cole's death. |
| Nov. 21, 2008 | Mr. Beatie timely filed the motion to substitute Mr. Cole for Ms. Cole as the "personal representative" of the latter's estate. |
| Nov. 26, 2008 | The motion to substitute Mr. Cole was granted. |
| Nov. 26, 2011 | Mr. Cole died. |
| Nov. 12, 2012 | NPC filed the suggestion of death establishing that Mr. Cole died a year earlier. |
| Dec. 22, 2012 | The Alabama probate court issued letters |

| | testamentary to David Cole in the matter of <u>his father's estate</u>. |
|---|---|
| Feb. 11, 2013 | Mr. Osborn filed a motion to substitute David Cole for Mr. Cole. |

## C. Discussion

As previously established, *supra* at p. 1, Ms. Cole died on July 27, 2008, and a suggestion of death was filed on September 2, 2008. A motion to substitute Mr. Cole for his late wife was timely filed on November 21, 2008, and the motion granted on November 26, 2006. As previously established, *supra* at p. 2, Mr. Cole died on November 26, 2011, subsequent to which NPC filed a suggestion of death on November 13, 2012. (DE 6245; Related Case 22) Although present counsel – Mr. Osborn – failed to file the suggestion of death within the 60-day time frame required under the CMO, the motion to substitute David Cole as plaintiff filed on February 11, 2013 was timely in the context of both Rule 25(a)(1) and the CMO.

Notwithstanding the timeliness of the second motion to substitute, in the order denying the second motion to substitute, the Magistrate Judge determined that the first motion to substitute had been granted based on misrepresentations of then-counsel Mr. Beatie. (DE 6674, pp. 4-6; Related Case 48) The Magistrate Judge's reasoning in that prior order is quoted below:

> Mr. Beatie characterized Mr. Cole as "the personal representative of the Estate of Sarah Cole" in the first motion to substitute. (DE 1837, ¶ 4; Related Case 13) "Personal representative" in this MDL is a term of art; it is not a catch-all expression for those identified variously as executor, administrator, guardian, etc. in a decedent's will. As the CMO makes clear, state law governs matters pertaining to the estate of a deceased plaintiff, including the appointment of a deceased's personal representative. (DE 89, pp. 12-13)
>
> Under Alabama law, the probate courts have original and general jurisdiction over the probate of wills and over granting letters testamentary and of administration. Ala. Code 1975 § 12-13-1(b)(1)-(2); *see Allen v. Estate of Juddine*, 60 So.3d 852, 854 (Ala. 2010).

5

Any executor, devisee, or legatee named in the will, or any person interested in the estate of a testator, or who has custody of such will, may have the will proved before the proper probate court. Ala. Code 1975 § 43-8-160. However, the administration of an estate does not begin merely upon the filing in the probate court of a petition for letters of administration or of a petition for probate of a will and for letters testamentary. *See Hoff v. Goyer*, 107 So.3d 1985, 1091 (Ala. 2012)(citing *Ex parte Smith*, 619 So.2d 1374, 1376 (Ala. 1993)). The probate court must act upon the petition and thereby activate the proceedings. *Id*. More particularly, the administration of an estate must be initiated by the probate court's appointment of a personal representative. *Hodges v. Hodges*, 72 So.3d 687, 691 (Ala. Civ. App. 2011). The duties and powers of a personal representative commence upon appointment. Ala. Code 1975 § 43-2-831; *see Wood v. Wayman*, 47 So.3d 1212, 1216 (Ala. 2010). The personal representative is the individual who has standing to sue on behalf of the estate, or to be sued with respect to the state. Ala. Code 1975 § 43-2-833(c).

As shown above, Alabama law required that Ms. Cole's estate be opened and that letters testamentary issued. The record before the court shows that Ms. Cole's estate was not opened at any time during the nearly five years since her death. In other words, the first motion to substitute misrepresented Mr. Cole as the personal representative of his late wife's estate.

The first motion to substitute filed by Mr. Beatie in this case is identical in all relevant ways to another motion to substitute that he filed that ran afoul of United States District Court, Northern District of Texas. *See Wilson v. Novartis Pharmaceuticals, Corp.*, 2013 WL 593895 (4:12-CV-684-A, N.D. Tex. Feb., 15, 2013). In that case, the district judge determined that the order granting the movant's request "that they be substituted as the personal representatives of the Estate of Jacqueline Wilson . . . was obtained through deception practiced on the Middle District of Tennessee by [the movants] through their counsel . . . ." *Id.* at p. 3.

Reconsidering the first motion to substitute in this case in light of *Wilson*, the Magistrate Judge finds that, just as in *Wilson*, the order granting the first motion to substitute in this action was – at the very least – obtained through Mr. Beatie's misrepresentations, if not outright fraud upon the court. The Magistrate Judge also finds that, just as in *Wilson*, Mr. Beatie's misrepresentation constituted an abusive litigation practice such as those denounced by the U.S.

> Supreme Court in *Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980). A motion granted under these circumstances cannot stand .
> . . .

(DE 6674, pp. 4-6; Related Case 48) In a footnote to the reasoning above, the Magistrate Judge noted that:

> Mr. Beatie was co-lead counsel in this MDL and member of the Plaintiff's Steering Committee (PSC). Therefore he [wa]s deemed to have been knowledgeable of the requirements set forth in the CMO, the intent/purpose of those requirements, and his obligations to comply with those requirements.

(DE 6674, p. 6 n. 2; Related Case 48)

Based on the reasoning above, the Magistrate Judge vacated *ab initio* the 2008 order granting the first motion to substitute. The upshot of that decision is that there has not been a plaintiff, proper or otherwise, in this case in the 5-plus years since Ms. Cole died in 2008. The further consequence of the failure substitute is the concomitant failure to comply with both Rule 25(a)(1) and the CMO. Even assuming for the sake of argument that the court were to waive CMO-specific substitution requirements, the 5-plus year delay at play here cannot be excused under the doctrine of "excusable neglect" under Rule 25, even if counsel had filed a belated motion for an extension of time – which he has not.

Turning briefly to the second motion to substitute, it clearly was timely filed as to the death of Mr. Cole. However, there are several fatal flaws with respect to this second motion to substitute. First, as noted above, the effect of vacating the Magistrate Judge's November 26, 2008 order is that Mr. Cole was not substituted for his late wife in this action as required under Rule 25(a)(1) and the CMO. Because Mr. Cole was never substituted, he has no standing with respect to his late wife in this MDL to convey to his son, David Cole. Second, even if Mr. Cole's substitution were determined to have been proper, Mr. Cole never opened his late wife's estate as required under

Alabama law.  Consequently, Mr. Cole did not have the legal authority to pursue his late wife's claims in this action on behalf of her estate, a requirement necessary for that authority to be conveyed through the process of substitution to another upon his death.  Third, because Mr. Cole never had the legal authority to pursue his late wife's claims in this action under Alabama law, the letters testamentary issued to David Cole on December 22, 2011 do not convey standing to be substituted in this action as a matter attendant to Mr. Cole's estate.  Finally, even if the motion to substitute David Cole were deemed to relate back to the suggestion of death filed when Ms. Cole died, substitution under those circumstances would require an extension of time under Rule 25(a)(1).  Once again, a delay of nearly five (5) years cannot be chalked up to "excusable neglect" even if a motion for an extension of time had been filed, which it has not.

For the reasons explained above, this action should be dismissed for failure to comply with Rule 25(a)(1) and the CMO.

### D.  Dismissal on Procedural Grounds

Dismissal on procedural grounds is disfavored in the Sixth Circuit, subject to the sound discretion of the court. *See Carter v. City of Memphis*, 636 F.2d 159, 161 (6th Cir. 1980).  An abuse of discretion occurs when the district court's action leaves "[a] definite and firm conviction that the trial court committed a clear error of judgment."  *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998).  Courts in the Sixth Circuit typically have considered the following four factors when considering whether dismissal is proper for failing to comply with procedural rules: 1) whether failure to comply was a result of willfulness, bad faith, or fault; 2) whether the adversary was prejudiced by the dismissed conduct; 3) whether the dismissed party was warned that failure to comply could lead to dismissal; and 4) whether less drastic sanctions were imposed or considered before dismissal was ordered.  *See e.g., Schafer v. City of Defiance Police Dept., et al.*, 529 F.3d

731, 737 (6th Cir. 2008); *Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999). Although none of the factors above is outcome dispositive, a case "is properly dismissed by the district court where there is a clear record of delay or contumacious conduct." *Knoll*, 176 F.3d at 363. These four factors are addressed below.

### 1. Willfulness, Bad Faith, or Fault

The issue of willfulness, bad faith, and/or fault turns on the following considerations: 1) why has it taken nearly four years since Mr. Osborn became attorney of record in this case for it to come to light that there has been no proper plaintiff in this action since Ms. Cole died in 2008; 2) why has it taken nearly four years for it to surface that Ms. Cole's estate never was opened as required under the CMO; 3) why has it taken nearly four years for it to become known that Mr. Cole was never his late wife's personal representative under Alabama law; 4) why was it left to NPC to file a suggestion of death after Mr. Cole died when the responsibility under the CMO falls to plaintiff; and 5) why did counsel neglect to file for an extension of time to sort this matter out, a motion that would have been granted had it been filed?

Although it does not say so specifically, the clear intent of the CMO is that plaintiffs' counsel will keep in touch with their clients, especially important in this MDL since the original plaintiffs all suffered from cancer, that some of them could be expected to die, and that any relief awarded in their case could be expected to accrue to their estate. Mr. Osborn was a member of the PSC (DE 87) at the time the CMO was entered on July 28, 2006 (DE 89). As a member of the PSC – like Mr. Beatie before him – Mr. Osborn is aware of the CMO requirements, the intent/purpose of those requirements, and his obligation to comply with them. Given Mr. Osborn's knowledge of the requirements under the CMO, <u>fault</u> must accrue to him for his failure to comply with those requirements.

9

As explained above, Mr. Osborn is at <u>fault</u> for not identifying the problem when it should have been, or correcting the problem when he should have. The next question is whether Mr. Osborn's actions/inactions were willful.

Mr. Osborn's failure in this case stems from the increasingly apparent pattern of what can best be described as the <u>willful</u> neglect of his clients. More particularly, given that Mr. Cole died on November 26, 2011, and that NPC filed the suggestion of death on November 13, 2012, it is apparent that Mr. Osborn had not been in contact with Mr. Cole almost a year. If he had been in contact with Mr. Cole, Mr. Osborn would have been the one to file the suggestion of death for Mr. Cole, not NPC. The foregoing evidences what has been demonstrated more than once in this MDL, *i.e.*, that Mr. Osborn has a spotty record at best of keeping in touch with his clients. In fact, so prevalent is Mr. Osborn's failure to keep in touch with his clients that the Magistrate Judge felt obliged to admonish him from the bench to do a better job during a hearing held under Rule 16, Fed. R. Civ. P. on April 11, 2013.

To the extent that failure to keep in touch with his clients constitutes Mr. Osborn's standard operating procedure (SOP), then that SOP is "knowing." To the extent that Mr. Osborn's failure to keep in touch with his clients is "knowing," then his conduct is **willful**.

## 2. Prejudice

NPC has had to bear the costs of litigating this issue. To the extent that NPC has had to commit resources to litigate an issue resulting from Mr. Osborn's failure to know what is going on in this case, NPC has been prejudiced.

This case also was among the first group of cases to be referred to fact discovery with March 15, 2013 the date that a suggestion of remand was to be entered. (DE 6156) The intended date to enter a suggestion of remand has passed. To the extent that discovery in this case has been held in

10

abeyance pending a resolution of this issue, remand will be delayed even longer. Moreover, if NPC's motion to dismiss is denied, NPC will have to complete discovery in this case at a time when NPC has begun to shift its resources to discovery in the second group of cases submitted to fact discovery thereby adversely affecting that effort. The delay in suggesting remand, and the potential requirement to address outstanding discovery requirements in this case while cases in the second group are in fact discovery, both constitute prejudice to NPC.

### 3. Prior Warning

Both Rule 25(a)(1) and the CMO provide clear warning that failure to substitute entitles the defendant to move for dismissal with prejudice. Mr. Osborn was aware of the possible consequences of his failure to comply with Rule 25(a)(1) and/or the CMO.

### 4. Whether Other less Drastic Sanctions Were Considered

The Magistrate Judge recognizes that dismissal with prejudice is the ultimate sanction for Mr. Osborn's failure to comply with the intent/purpose of Rule 25(a)(1) and the CMO. However, after considering other less drastic sanctions, the Magistrate Judge is of the view that dismissal with prejudice is the appropriate sanction. Mr. Osborn's failure in this case has burdened the court, strained scarce court resources, delayed disposition of this case, and prejudiced the defendant.

### 5. Summary of the Analysis

The four factors addressed above each favor NPC. Therefore, NPC's motion to dismiss on procedural grounds should be granted.

### III. CONCLUSIONS

For the reasons explained above, this case should be dismissed with prejudice for failure to comply with Rule 25(a) and the CMO.

### IV. RECOMMENDATIONS

For the reasons explained above, the Magistrate Judge recommends that the motion to dismiss filed by NPC (DE 6427; Related Case 33) be **GRANTED**, that this case be **DISMISSED** with prejudice, and that any pending motions be **TERMINATED** as moot**.**

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days from service of this R&R within which to file with the District Court any written objections to the proposed findings and recommendations made herein. Any party opposing shall have fourteen (14) days from receipt of any objections filed regarding this R&R within which to file a response to said objections. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal of this R&R. *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 1111 (1986).

**ENTERED** this the 10th day of June, 2013.

/s/Joe B. Brown
Joe B. Brown
United States Magistrate Judge